1
2
3
4
5
6

**THE KICK LAW FIRM, APC**
Taras Kick (State Bar No. 143379)
(Taras@kicklawfirm.com)
Roy K. Suh (State Bar No. 283988)
(Roy@kicklawfirm.com)
Daniel J. Bass (State Bar No. 287466)
(Daniel@kicklawfirm.com)
815 Moraga Drive
Los Angeles, California 90049
Telephone:   (310) 395-2988
Facsimile:   (310) 395-2088

7
8

Attorneys for Plaintiffs GREGORY
WALTERS and CHRISTI WALTERS,
individually, and on behalf of all others
similarly situated

9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21

GREGORY WALTERS and CHRISTI
WALTERS, individually, and on behalf of all
others similarly situated,

　　　　　Plaintiffs,

　　　vs.

FAMOUS TRANSPORTS, INC, a Michigan
Corporation; PANTHER II
TRANSPORTATION, INC, an Arkansas
Corporation; ARCBEST LOGISTICS INC, an
Arkansas Corporation; ARCBEST
CORPORATION, a Delaware Corporation;
and DOES 1 through 100, inclusive,

　　　　　Defendants.

CASE NO.: 4:19-cv-08016-YGR

**MEMORANDUM IN OPPOSITION TO
NOTICE OF MOTION AND MOTION
TO TRANSFER VENUE**

Date:   April 28, 2020
Courtroom:     1
Time:   2:00 p.m.
Judge: Hon. Yvonne Gonzalez Rogers

Original Complaint Filed: October 15, 2019
Action Removed: December 6, 2019
Trial Date:  Not Set

22
23
24
25
26
27
28

OPPOSITION TO MOTION TO TRANSFER
VENUE

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 9

II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND.................................. 9

III.   THE DEFENDANTS' FORUM SELECTION CLAUSE DOES NOT APPLY............... 10

    A.    Plaintiffs Are Not Bound By Defendants' Forum Selection Clause............................. 10

    B.    Plaintiffs Are Not Third-Party Beneficiaries To The Operating Agreement.................... 13

    C.    Even if the Forum Selection Clause was Applicable, Enforcement would Contravene
California's Strong Public Policy of Retaining Jurisdiction Over Employment Disputes
Occurring Within the State............................................................................... 14

IV.    DEFENDANTS HAVE NOT MET THEIR BURDEN UNDER SECTION 1404(a) ...... 16

    A.    Convenience Of The Parties Does Not Warrant Transfer To Ohio. ............................. 18

    B.    The Convenience of the Witnesses does Not Warrant Transfer to Ohio. ......................... 20

        1. Defendants Have Not Demonstrated Ohio Would be More Convenient ..................... 20

        2. Defendants' Alleged Contrary Authority is Distinguishable ........................................ 22

    C.    Familiarity with Governing State Law Strongly Favors Venue in California. .............. 23

    D.    Judicial Economy Does Not Favor Transfer to Ohio...................................................... 24

    E.    Injunctive Relief Substantially Favors Maintenance of Venue in California. ................... 25

    F.    The Location of Evidence does Not Support Transfer to Ohio. ....................................... 25

    G.    Local Interests Strongly Weigh Against Transfer to Ohio............................................ 26

    H.    The Unfairness of Imposing Jury Duty on Citizens in an Unrelated Forum Weighs
Against Transfer to the Northern District of Ohio. .................................................... 27

V.     CONCLUSION ..................................................................................................... 28

1

## Table of Authorities

2

### Cited Cases

3 *Alabsi v. Savoya*,

4     2019 WL 1332191 (N.D. Cal. 2019) ........................................................................ 26

5 *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,

6     571 U.S. 49 (2013) ........................................................................................................ 15

7 *Ayala v. Antelope Valley Newspapers*,

8     59 Cal.4th 522 (2014) ................................................................................................ 9, 10

9 *Booher v. JetBlue Airways Corp.*,

10     2016 WL 1642929 (N.D. Cal. Apr. 26, 2016) ............................................................ 24

11 *Burger King Corp. v. Rudzewicz*,

12     471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ............................................ 13

13 *Carolina Cas. Co. v. Data Broad. Corp.*,

14     158 F. Supp. 2d 1044 (N.D. Cal. 2001) .................................................................... 16

15 *Cascades Projection LLC. v. NEC Display Solutions of America, Inc.*,

16     2015 WL 12698454 (C.D. Cal. June 5, 2015) ............................................................ 24

17 *Commodity Futures Trading Comm'n v. Savage*,

18     611 F.2d 270 (9th Cir. 1979) .................................................................................... 16

19 *Decker Coal Co. v. Commonwealth Edison Co.*,

20     805 F.2d 834 (9th Cir. 1986) ........................................................................ 16, 17, 18

21 *Depuy Synthes Sales, Inc. v. Stryker Corp.*,

22     2019 WL 1601384 (C.D. Cal. June 7, 2019) ........................................................ 26-27

23 *E.&J. Gallo Winery v. F.&P.S.P.A.*,

24     899 F. Supp. 465 (E.D. Cal. 1994) ............................................................................ 16

25 *Finjan, Inc. v. Sophos Inc.*,

26     2014 WL 2854490 (N.D. Cal. June 20, 2014) ............................................................ 25

27 *Florens Container v. Cho Yang Shipping*,

28     245 F. Supp. 2d 1086 (N.D. Cal. 2002) .................................................................... 20

OPPOSITION TO MOTION TO TRANSFER
VENUE

*Foster v. Nationwide Mut. Ins. Co.*

2007 U.S. Dist. LEXIS 95240 (N.D.Cal. Dec. 14, 2007) ........................................................ 22

*Friedman v. Global Payments, Inc.*,

2019 WL 1718690 (C.D. Cal. 2019) ................................................................................ 27

*Gates Learjet Corp. v. Jensen*,

743 F.2d 1325 (9th Cir. 1984) ................................................................................ 20-21

*General Ret. Sys. of the City of Detroit v. The Wells Fargo Mortg. Backed Secs.*

2009 U.S. Dist. LEXIS 130360, at *24-25, (N.D. Cal. 2009)................................................. 20

*Gulf Oil Corp. v. Gilbert*,

330 U.S. 501 (1947) ................................................................................ 16

*Hatch v. Reliance Ins. Co.*,

758 F.2d 409 (9th Cir. 1985) ................................................................................ 16

*Haynes III v. World Wrestling Entertainment, Inc*,

2015 U.S. Dist. LEXIS 82537, 2015 WL 3905281 (D. Or. 2015................................................ 19

*Herman v. Andrus Transp. Servs.*,

2017 WL 8292463 (C.D. Cal. Feb. 15, 2017) ........................................................... 17, 21, 27

*Hoffman v. Blaski*,

363 U.S. 335 (1960) ................................................................................ 16

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,

485 F.3d 450 (9th Cir. 2007) ................................................................................ 11, 12

*In re Nine Mile Ltd.*,

692 F.2d 56 (8th Cir. 1982) ................................................................................ 16

*Jimenez v. Haxton Masonry, Inc.*,

2019 U.S. Dist. LEXIS 79639 (N.D. Cal. May 10, 2019) ........................................................ 24

*Johns v. Panera Bread Co.*,

No. 08-1071-SC, 2008 U.S. Dist. LEXIS 78756 (ND Cal July 21, 2008) ............................. 19

*Jones v. GNC Franchising, Inc.*,

211 F.3d 495 (9th Cir. 2000) ................................................................................ 17, 22

OPPOSITION TO MOTION TO TRANSFER
VENUE

*Karl v. Zimmer Biomet Holdings, Inc.*,

    2018 WL 5809428 (N.D. Cal. Nov. 6, 2018) .................................................................. 26, 27

*Kia Motors Am., Inc. v. MPA Autoworks*,

    2005 U.S. Dist. LEXIS 49299 (C.D. Cal. 2005) ...................................................................... 25

*Likewise, in Parr v. Stevens Transp., Inc., No. C 19-02610-WHA*,

    2019 WL 4933583 (N.D. Cal. Oct. 7, 2019) ..................................................................... 22-23

*Lou v. Belzberg*,

    834 F.2d 730 (9th Cir. 1987) .................................................................................................. 18

*Ltd., No. 16-CV-00669-YGR*,

    2017 U.S. Dist. LEXIS 7105, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) ........................... 12

*Luna v. Wal-Mart Transportation, LLC, No. EDCV18331PSGKKX*,

    2018 WL 3569357 (C.D. Cal. July 11, 2018) ........................................................................ 11

*M/S Bremen v. Zapata Off-Shore Co.*,

    407 U.S. 1 (1972) ................................................................................................................... 12

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,

    858 F.2d 509 (9th Cir. 1988) .................................................................................................. 11

*Marshall v. Baltimore and Ohio R.R.*,

    57 U.S. 314 (1853) ................................................................................................................. 15

*Martensen v. Koch*,

    942 F.Supp.2d 983 (N.D. Cal. 2013) ..................................................................................... 16

*Martinez v. Knight Transp., Inc.*,

    2017 WL 2722015 (E.D. Cal. June 23, 2017) ...................................................... 17, 24, 25, 26

*Meras Engineering, Inc. v. CH2O, Inc., No. C-11-0389 EMC*,

    2013 U.S. Dist. LEXIS 5426, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ........................... 13

*Meyer Mfg. Co. v. Telebrands Corp., No. CIV. S-11-3153 LKK*,

    2012 WL 1189765 (E.D. Cal. Apr. 9, 2012) ......................................................................... 20

*Morris Cerullo World Evangelism, Inc. v. World Religious Relief, Inc., No. 13-CV-2780-BTM-BLM*,

OPPOSITION TO MOTION TO TRANSFER
VENUE

2014 WL 4352090 (S.D. Cal. Sept. 2, 2014) ........................................................................ 20

*Murphy v. Schneider National, Inc.*,

362 F.3d 1133 (9th Cir. 2004) ........................................................................................... 15

*Nguyen v. Barnes & Noble, Inc.*

763 F.3d 1171 (9th Cir. 2014) ........................................................................................... 13

*Oman v. Delta Air Lines, Inc.*,

889 F.3d 1075 (9th Cir. 2018) ........................................................................................... 24

*Ruiz v. Affinity Logistics Corp.*,

754 F.3d 1093 (9th Cir. 2014) ............................................................................................. 9

*Russell v. Werner Enterprises, Inc., No. C 14-3839 PJH*,

2014 WL 4983747 (N.D. Cal. Oct. 6, 2014) ...................................................................... 23

*Saleh v. Titan Corp.*,

361 F. Supp. 2d 1152 (S.D.Cal. 2005) ............................................................................... 17

*Sarinara v. DS Waters of Am. Inc.*,

2013 WL 3456687 (N.D. Cal. July 9, 2013) ...................................................................... 26

*Senne v. Kan. City Royals Baseball Corp.*,

934 F.3d 918 (9th Cir. 2019) ............................................................................................. 27

*Singh v. Roadrunner Intermodal Servs., LLC, No. 15-cv-01701-JSW*,

2015 WL 5728415 (N.D. Cal. Sep. 30, 2015) ................................................................... 21

*SkyRiver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*,

2010 WL 4366127 (N.D. Cal. 2010) ................................................................................. 21

*Smith v. Oakley Transp., Inc., No. 19-CV-05854-EMC*,

2020 WL 563076 (N.D. Cal. Jan. 30, 2020) ...................................................................... 22

*Stribling v. Picazo, No. 15-CV-03337-YGR*,

2018 WL 620146 (N.D. Cal. Jan. 30, 2018) ...................................................................... 21

*STX, Inc. v. Trik Stik, Inc.*,

708 F.Supp. 1551 (N.D. Cal. 1998) ................................................................................... 21

OPPOSITION TO MOTION TO TRANSFER
VENUE

*Sullivan v. Oracle Corp.*,

    51 Cal.4th 1191 (2011) ......................................................................... 15, 27

*Swamy v. Title Source, Inc.*,

    2017 WL 2533252 (N.D. Cal. June 12, 2017) ........................................... 23

*TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*,

    915 F.2d 1351 (9th Cir. 1990) .................................................................. 13

*Tompkins v. 23andMe, Inc.*,

    840 F.3d 1016 (9th Cir. 2016) .................................................................. 15

*Trend Micro Inc. v. RPost Holdings, Inc., No. 13-CV-05227-WHO*,

    2014 WL 1365491 (N.D. Cal. Apr. 7, 2014) ............................................. 21

*Van Dusen v. Barrack*,

    376 U.S. 612 (1964) .................................................................................. 24

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,

    129 F. Supp. 3d 1012 (D. Or. 2015) ........................................................ 25

*Villalpando v. Exel Direct Inc.*,

    2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ............................................. 9

*Vuori v. Grasshopper Capital LLC, No. 17-CV-06362-JCS*,

    2018 WL 1014633 (N.D. Cal. Feb. 22, 2018) .......................................... 20

*Ward v. United Airlines, Inc.*,

    889 F.3d 1068 (9th Cir. 2018) .................................................................. 24

*Williams v. Bowman*,

    157 F Supp2d 1103 (ND Cal July 26, 2001) ...................................... 19, 20

*Yei A. Sun v. Advanced China Healthcare, Inc.*,

    901 F.3d 1081 (9th Cir. 2018) .................................................................. 14

**Cited Statutes**

28 U.S.C. § 1404 ..................................................................................... 16, 17

California Business and Professions Code section 17200 ............................. 25

California Labor Code § 226 .......................................................................... 26

OPPOSITION TO MOTION TO TRANSFER
VENUE

California Labor Code § 1171.5 ................................................................................. 15

California Labor Code § 925 ............................................................................... 15, 26

California Labor Code § 1171 .............................................................................. 15, 26

OPPOSITION TO MOTION TO TRANSFER
VENUE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this case, Plaintiffs Gregory Walters and Christi Walters ("Plaintiffs") asserts claims under the California Labor Code on behalf of a class of drivers for time worked in California for Defendants anther II Transportation, Inc., Arcbest Logistics, Inc., and Arcbest Corporation ("Defendants") who misclassified their drivers as independent contractors, thereby violating California Labor Codes, including failing to pay minimum wage, meal and rest breaks, and all wages owed. Class actions for wage and hour violations based on misclassification of drivers are well-established under California law. *See e.g., Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1105 (9th Cir. 2014); *Villalpando v. Exel Direct Inc.*, 2015 WL 5179486, *51 (N.D. Cal. Sept. 3, 2015); and *Ayala v. Antelope Valley Newspapers*, 59 Cal.4th 522 (2014). Notably, Plaintiffs' claims pled in the operative complaint are based on California Labor Code or statutory law and implicate nonwaivable statutory rights.

Although this case implicates California statutory claims and is pursued solely on behalf of class members for time worked in California, or who were California residents, Defendants seek to transfer this case to Ohio. They do so by relying on a venue clause, which was not signed by Plaintiffs and, moreover, if the clause did apply, would violate California public policy by displacing nonwaivable Labor Code rights. The venue clause Defendants rely on provides no basis for transferring this California class action to Ohio. Nor are there any grounds for discretionary transfer based on the convenience of parties or witnesses.

### II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are a married couple who worked as a team hauling freight for the Defendants in many states throughout the United States, including California where their claims have been filed and under whose laws their claims are based. Declaration of Gregory Walters, ¶ 2; Declaration of Christi Walters, ¶ 2 (collectively "Walters Declarations").  The Plaintiffs began working for the Defendants around February 22, 2018 when we attended a "Panther Orientation" at Defendants' offices in Ohio and each signed a matching document titled "Independent Contractor Agreement" dated February 22, 2018. Walters Declarations, ¶ 3; *see* ECF 36-2, Exhibits A-B.

OPPOSITION TO MOTION TO TRANSFER
VENUE

Neither of the Plaintiffs signed or were even made aware of the "Independent Contractor Operating Agreement" dated July 17, 2019 which the Defendants now seek to enforce against the Plaintiffs. *See* Walters Declarations, ¶ 4; *see* ECF 36-1, Exhibit A.  In fact, the Plaintiffs, who have limited understanding of the law, never knowing agreed to or would agree to litigating their legal claims in the courts located in the state of Ohio, nor have they ever lived or maintained addresses in Ohio as they have lived in Oklahoma the entire time that they worked for Defendants though they did travel for work. Walters Declarations, ¶¶ 5-6.

Plaintiffs spent significant time making trips to, from, and within California, including the Northern District of California. *See* Walters Declarations, ¶¶ 7-10. According to Defendant, about 13% of Plaintiffs' trips either began or ended in California. *See* ECF 36-2. Plaintiffs did not drive to California of their own accord or by happenstance. Rather, Plaintiffs delivered loads to and from California at the direction of the Defendants' dispatchers. Walters Declarations, ¶ 7.   The work done in California was particularly significant because Plaintiffs would often wait for a day or more after making a delivery to California, before commencing  another dispatch leaving California. *Id*. at ¶ 8. In other words, Plaintiffs drove to, from, and within California only because Defendants told them where to go and when to be there.

Plaintiffs interacted with individuals who were the Defendants' clients while completing trips in California, including with frequent clients of the Defendants who would have personal knowledge of the time Plaintiffs spent working for the Defendants in California. *Id*. at ¶¶ 8-9. Many of these individual clients, or their representatives, that interacted with the Plaintiffs and the putative class members are identified by name and contact number on the Defendants' Bills of Lading. *Id*. at ¶¶ 8-9, Exh. A-B.  Given these witnesses are in California and because California would also be a more convenient and less costly forum for Plaintiffs (*Id*. at ¶¶ 10-11) Plaintiffs oppose Defendants' Motion to Transfer this matter to the Northern District of Ohio.

III.   **THE DEFENDANTS' FORUM SELECTION CLAUSE DOES NOT APPLY**

     A.   **Plaintiffs Are Not Bound By Defendants' Forum Selection Clause**

Even the Defendants recognize that Plaintiffs did not sign the agreement in which the alleged forum selection clause appears. As non-signatories, the Plaintiffs cannot be bound to the

present contract presented by Defendants. The Ninth Circuit has held that there are limited circumstances where a court may enforce a forum selection clause against a non-signatory to a contract, specifically where "the alleged conduct of the non-parties is closely related to the contractual relationship." *Manetti-Farrow, Inc.* v. *Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007). Typically, these situations occur when sophisticated corporate entity defendants who, due to their other agreements or relationships with a related defendant who did sign the agreement with a forum selection clause, is found to also be bound by that forum selection clause or able to enforce a forum selection clause it did not sign against a plaintiff who did.

In *Manetti-Farrow*, the Ninth Circuit held that a variety of non-signatory corporate defendants would be bound to a forum selection clause, even though the signatory plaintiff only had a contract with one defendant. *See* 858 F.2d at 510. In that case, plaintiff Manetti-Farrow had entered into an exclusive dealership agreement with defendant Gucci Parfums. *See id.* The contract included a forum selection clause designating Florence, Italy as the forum for resolving disputes. *Id.* The plaintiff later brought claims in the Northern District of California against Gucci Parfums and several different non-signatory Gucci entities. These non-signatory Gucci defendants were involved in some way in ratifying or executing the contract between the signatories. *Id.* at 511. The Ninth Circuit held that the forum selection clause applied to all signatory and non-signatory defendants, even though only defendant Gucci Parfums signed the exclusive dealership agreement, because where "the alleged conduct of the non-parties is so closely related to the contractual relationship", "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* at 514 n. 5 (citation omitted).

In *Holland America*, the Ninth Circuit again bound two non-signatory defendants to a forum selection clause. 485 F.3d at 454. There, the plaintiff, Holland-America, entered into a contract with Bureau Veritas pursuant to which Bureau Veritas conducted surveys of the plaintiff's cruise ships. The contract designated Nanterre, France as the forum for resolving disputes. *Id.* at 455. After an accident that caused severe damage to one of its ships, the plaintiff brought suit in

the Western District of Washington against Bureau Veritas and several entities, including BVNA and BV Canada, who were not parties to the contract and were separate corporations, but who performed ship surveys in the United States and Canada. *Id.* The plaintiff alleged that the combined failure of all of the defendants to conduct adequate surveys caused the accident and the resulting loss of the ship. *Id.* The Ninth Circuit pointed out in a footnote that while Bureau Veritas, BVNA, BV Canada, were separate entities, "the record reflects that one of the few things upon which the parties agree is that Holland America's relationship with BV Canada and BVNA *arose out of and was intimately related to* its relationship with Bureau Veritas." *Id.* at 456 n. 2 (emphasis added). Under these facts, the Ninth Circuit held that the forum selection clause requiring adjudication in France applied to claims against BVNA and BV Canada "because any transactions between those entities and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas." *Id.* at 456.

In both *Manetti-Farrow* and *Holland America*, the bound non-signatory defendants had "consented" to the forum selection clause because the non-signatories were intimately involved in the ratification or execution of the contract containing the forum selection clause. *See also Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 U.S. Dist. LEXIS 7105, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (binding two non-signatory defendants to      a forum selection clause where      one non-signatory defendant had personally negotiated and signed the contract on behalf of a signatory and the other non-signatory defendant was   paid   commissions   to   carry   out   the   contract   on   behalf   of the signatory plaintiff).

In this case, however, unlike in *Manetti-Farrow* and *Holland America*, there is no allegation Plaintiffs played any role in the formation or execution of the agreement containing the forum selection clause. Whereas in those cases, the non-signatory parties were intimately involved in the formation and execution of the contracts, and thus were effectively on notice of the forum selection clauses contained in the contracts, here Plaintiffs had no involvement with the formation or execution of the agreement. Moreover, in both *Manetti-Farrow* and *Holland America*, non-signatory *defendants* sought      to      enforce      a forum selection clause against

a signatory plaintiff. *See also Meras Engineering, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 U.S. Dist. LEXIS 5426, 2013 WL 146341, at *11 (N.D. Cal. Jan. 14, 2013) (binding a non-signatory plaintiff employer     to a     forum selection clause after non-signatory plaintiff employer and signatory employees filed a suit to declare void certain non-compete clauses in employees' employment contracts with former employer). Thus, in those cases it could not be said that the non-signatory defendant were unfairly subject to jurisdiction without "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotes and citations omitted). Here, by contrast, Plaintiffs have done nothing to indicate that they expect or are willing to be hauled into Court in Ohio.

### B.   Plaintiffs Are Not Third-Party Beneficiaries To The Operating Agreement

The completely incomparable case of *Wescott v. Reisner*, which is cited to by the Defendants, actually holds *Manetti-Farrow* was inapplicable to the situation, finding that the defendant there was not "subject to personal jurisdiction through the forum selection clause as a person allegedly 'closely related to the contractual relationship.'" *Wescott v. Reisner*, 2018 U.S. Dist. LEXIS 92320, *8, 2018 WL 2463614 (N.D. Cal. June 1, 2018).  Similarly, *Nguyen v. Barnes & Noble, Inc.*, which Defendants only cite indirectly, does allow through the third-party beneficiary test,[1] a non-signatory plaintiff who "knowingly exploits the benefits of [an] agreement and receives benefits flowing directly from the agreement" may be required to abide by a requirement to litigate in a particular forum. 763 F.3d 1171, 1180 (9th Cir. 2014); *TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (a third-party beneficiary affirmatively bringing suit is constrained by a forum selection clause because of the "well-settled contract law [principle] that the scope of a third-party beneficiary's rights is defined by the contract")

Here, Plaintiffs are not third-party beneficiaries of the Defendants' alleged agreement, nor are they seeking to enforce the contract terms of the Independent Contractor Operating Agreement in their First Amended Complaint which specifically identifies the types of contracts, to the extent

---

[1] Defendants do not refer to it as such, but argue that Plaintiffs are also bound by the Ohio forum-selection clause because they seek benefits under the Operating Agreement.

OPPOSITION TO MOTION TO TRANSFER VENUE

they were even written, by attaching one as an Exhibit. See ECF 31-1 ("Driver Rewards Program"). In fact, Plaintiffs were not even aware of the agreement until know, having signed a completely different agreement presented to them by Defendants at the orientation conducted by the Defendants. Walters Declarations, ¶¶ 3-4. As such, the Plaintiffs' ability to "knowingly" do anything regarding the agreement now being presented by the Defendants is impossible. Moreover, the Defendants' alleged agreement specifically states that it isn't applicable to third-party beneficiaries, stating as follows:

> **No Third-Party Beneficiaries.** Nothing in this Agreement creates any rights in any party not a signatory to or expressly designated as a third-party beneficiary of this Agreement.

ECF 36-1, Exh A, ¶ 24(d). Allowing Defendants line of reasoning and enforcing the forum selection clause in question would allow Defendants to enforce their chosen forum selection clause against any plaintiff who brings a breach of contract claim against them just by entering into a separate agreement with a co-defendant, at any time. Any such clause, like the one here if applied to the Plaintiffs, must be considered "invalid due to 'fraud or overreaching'" in the present context. *Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081 (9th Cir. 2018), 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

**C.     Even if the Forum Selection Clause was Applicable, Enforcement would Contravene California's Strong Public Policy of Retaining Jurisdiction Over Employment Disputes Occurring Within the State**

In *M/S Bremen v. Zapata Off-Shore C*o., 407 U.S. 1, 12 (1972), the United States Supreme Court identified three grounds upon which the challenging party can show that the forum selection clause is unreasonable and should not be enforced:

> (1) 'if the inclusion in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'

*Murphy v. Schneider National, Inc*., 362 F.3d 1133, 1140 (9th Cir. 2004) (*quoting Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (*quoting and citing M/S Bremen*, 407 U.S. at 12-13)); *see also Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1029-30 (9th Cir. 2016);

Defendants' enforcement of the forum selection clause at issue would be unreasonable based on both the first and third grounds and therefore Defendants' Motion must be denied.

Here, even if the forum selection clause was applicable to the current dispute (which it is not) enforcing the clause under the present circumstances would be against the strong public policy of California in favor of workers' protections as expressed by California Labor Code §§ 925 and 1171 et seq. Courts have long refused to enforce contractual provisions that contravene public policy. *See e.g., Marshall v. Baltimore and Ohio R.R*., 57 U.S. 314, 334 (1853) ("It is an undoubted principle of the common law that it will not lend its aid to enforce a contract to do an act that is illegal, or which is inconsistent with sound morals or public policy…."). Because of this strong policy of deference to public policy, the United States Supreme Court confirmed in *Atlantic Marine* that a "district court may consider arguments about public-interest factors" when determining whether to enforce an otherwise valid forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

Similarly, though California Labor Code § 925 does not directly bar the application of a forum selection clause in the case of Plaintiffs, who reside in another state, it does clearly manifest California's strong public policy concerns and would likely apply to many if not all of the putative class members Defendants have identified as California residents. Moreover, California has made it clear that the protections of the California's Labor Code apply and protect citizens of other states and of foreign countries working in California. *See Sullivan v. Oracle Corp*., 51 Cal.4th 1191, 1197 (2011) (finding even in the "preambular section of the wage law confirms that our employment laws apply to 'all individuals' employed in this state" quoting Cal. Labor Code § 1171, internal citations omitted); *see also* California Labor Code § 1171.5(a) "All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state."

Lastly, the Court should also take into consideration the power imbalance between the parties, the educational background of the Plaintiffs, as well as Plaintiffs business expertise as compared to Defendants and, in so doing, deny Defendants' Motion. Plaintiffs were not even given

OPPOSITION TO MOTION TO TRANSFER
VENUE

1  the opportunity to see, much less authorize, the forum selection clause which Defendants contend

2  applies to them enforcing such an agreement if not directly fraudulent must be the product of

3  overreaching, otherwise it is enforceable against any plaintiff suing more than one defendant.

## IV.   DEFENDANTS HAVE NOT MET THEIR BURDEN UNDER SECTION 1404(a)

5  Defendants failed to satisfy their burden for obtaining transfer of venue under 28 U.S.C. §

6  1404(a). Since the forum-selection clause should be deemed unenforceable as discussed in detail

7  above, the next step would normally be for the Court to perform a § 1404(a) analysis. *Atl. Marine*,

8  134 S.Ct. at p. 581. Ultimately, Defendants have failed to satisfy their burden, and their motion

9  should be denied. *See e.g. Martensen v. Koch*, 942 F.Supp.2d 983, 999 (N.D. Cal. 2013) ("[w]hen

10  a defendant moves for a 1404(a) transfer, the defendant bears the burden to show that transfer is

11  appropriate."); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)

12  (holding the movant bears the burden of justifying the transfer by a strong showing of

13  inconvenience). Specifically, Defendants as the moving parties bear the heavy burden to show that

14  transfer is warranted. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th

15  Cir. 1979); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001);

16  *E.&J. Gallo Winery v. F.&P.S.P.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994). The defendants must

17  make a strong showing that inconvenience and the interests of justice warrant upsetting plaintiff's

18  choice of forum. *See Decker Coal Co.*, 805 F.2d at 843. Indeed, transfer under section 1404(a)

19  "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). "[U]nless the

20  balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should

21  rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

22  As part of the required two-step analysis for such transfer motions, a court must first

23  determine whether the action "might have been brought" in the potential transferee court. *See

24  Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th

25  Cir. 1985). Next, a court must make an "individualized, case-by-case consideration of convenience

26  and fairness," weighing the convenience of the parties, the convenience of the witnesses, and the

27  interest of justice. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Relevant

28  factors include: (1) the plaintiffs' choice of forum; (2) the extent to which there is a connection

between the plaintiffs' causes of action and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses, (5) the ease of access to sources of proof; (6) the existence of administrative difficulties resulting from court congestion; (7) whether there is a "local interest in having localized controversies decided at home"; and (8) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D.Cal. 2005); *see also Jones*, 211 F.3d at pp. 498-99; *Decker Coal Co.*, 805 F.2d at p. 843; 28 U.S.C. § 1404(a).

Here, Defendants' motion to transfer this action to the District Court of Ohio should be denied by this Court since the Northern District of California is the appropriate venue for this case. Defendants have failed to satisfy its heavy burden under Section 1404(a) of establishing that "the convenience or the parties and witnesses and the interest of justice support the transfer." In two recent cases in the Ninth Circuit in which similar arguments were found insufficient to grant non-California trucking companies' motions to transfer truck drivers' class actions asserting violations of California's wage-and-hour laws. *See Martinez v. Knight Transp., Inc.*, 2017 WL 2722015 (E.D. Cal. June 23, 2017); *Herman v. Andrus Transp. Servs.*, 2017 WL 8292463, at *2-3 (C.D. Cal. Feb. 15, 2017). Both cases were brought by plaintiffs who worked as interstate trucker drivers and did not reside in California, and brought wage-and-hour claims exclusively under California law, contending that they had not been compensated for all hours worked. In both cases, the courts persuasively analyzed the section 1404(a) factors and found that the defendants failed to carry their burden in support of transfer. *See Martinez*, 2017 WL 2722015, at *21 (concluding that "that the balance of the factors … weigh[ed] against transfer … to the District of Arizona" because "[p]laintiff ha[d] chosen to litigate th[e] action in the Eastern District of California; br[ought] California law claims based on factual allegations that took place within California; and s[ought] to represent a class of employees who worked within the state"); *Herman*, 2017 WL 8292463, at *3 ("[I]t's beyond debate that all of Herman's claims arise under California law, the claims are related to transportation services performed by Andrus employees driving in California, this Court and the Ninth Circuit regularly hear diversity cases concerning California law, and juries in this

district are readily capable of resolving California wage-and-hour disputes."). Here, the case against transfer is similar when turning to the applicable factors.

### A.    Convenience Of The Parties Does Not Warrant Transfer To Ohio.

"[G]reat weight is generally accorded plaintiff's choice of forum[.]" *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citations omitted). A transfer should not be ordered simply to make the case more convenient for the defendant. *See Decker Coal Co*., 805 F.2d at p. 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" (citations omitted). Further, where the plaintiff is a private individual and the defendants are large corporations, defendants face a greater burden of establishing a showing of inconvenience great enough to warrant upsetting a plaintiff's choice of forum. *McCormack v. Medcor, Inc*., 2014 U.S. Dist. LEXIS 66502, at *6 (E.D. Cal. May 14, 2014) (*citing Miracle v. N.Y.P. Holdings, Inc*., 87 F. Supp. 2d 1060, 1074 (D. HI 2000)). In such circumstances a defendants' assertions regarding monetary expense and difficulty in litigating in a given forum are likely to be disregarded, particularly in this era of digital communication and discount air travel. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). It is clear that "[t]he venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff." *Group A. Autosports, Inc. v. Holtzberg*, 2008 WL 4382661, at *3 (C.D. Cal. Sept. 2, 2008) (quoting *Reed Elsevier, Inc. v. Innovator Corp*., 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000)). However, that is exactly what Defendants are trying to do.

Plaintiffs brought the instant action in the Superior Court of San Francisco, which Defendants removed to the Northern District of California. The entire defined class for this matter consists of only of drivers who worked for Defendants in California. Given, Defendants are large corporations with operations spanning the country, the burden and inconvenience to Defendants of litigating in California is minute. Indeed, even Defendants themselves recognize they are "at home" in multiple states across the country, admitting that they are incorporated and headquartered in at the very least Ohio, Michigan and Arkansas. Conversely, Plaintiffs are individuals of modest means and transferring the venue to Ohio would be an unexpected inconvenience in traveling to state in which Plaintiffs have never resided and to which they did not intend to travel. See Walters

Declarations, ¶¶ 5-6.  Therefore, the factors of Plaintiffs' forum choice and convenience to the parties weigh against Defendants' proposed transfer.

Defendants' proffered authorities to the contrary are factually and procedurally distinguishable, because they were nationwide class actions with other driving factors finding against jurisdiction. *See Johns v. Panera Bread Co.*, No. 08-1071-SC, 2008 U.S. Dist. LEXIS 78756, 2008 WL 2811827 (ND Cal July 21, 2008) (citing cases "consistent with Ninth Circuit and Supreme Court authority" for the proposition that "[p]laintiff's decision to seek to represent a nationwide class substantially undercuts this deference [normally afforded plaintiff's choice of forum]."). In *Castillo v. Caesars Entm't Corp.*, No. 18-cv-05781-EMC, 2018 U.S. Dist. LEXIS 201721, 2018 WL 6199682, at *1-2 (N.D. Cal. Nov. 28, 2018) Castillo had filed a nationwide class action asserting a violation of the Telephone Consumer Protection Act ("TCPA") and the court found that given California lacked personal jurisdiction over Caesars, despite its possible agency relationship with a California based company that built Caesars's text platform, that transfer was appropriate to remedy the lack of personal jurisdiction. The court held that because the role of the agent was attenuated and Caesars sent the text messages in issue, rather than their California agent, the court could not use the agent's domicile to establish residency over the principal, Caesars. *Id.* at *4.  Similarly, in *Haynes III v. World Wrestling Entertainment, Inc.*, No. 3:14-cv-01689-ST, 2015 U.S. Dist. LEXIS 82537, 2015 WL 3905281 (D. Or. 2015) the plaintiff had filed a nationwide class action, but the found that the case warranted transfer to Connecticut in large part because it had concerns about forum shopping. See *Williams v. Bowman*, 157 F Supp2d 1103, 1106 (ND Cal July 26, 2001) ("If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference.") In *Haynes*, counsel for plaintiff had previously filed two other nationwide class actions in Pennsylvania and Tennessee that had both been transferred to Connecticut already and the court was "persuaded that the content and timing of these multi-jurisdictional filings constitute evidence of forum shopping." *Haynes III*, 2015 U.S. Dist. LEXIS 82537 at *13.

Here, the Defendants directed Plaintiffs and the class members to complete work for them in California and Plaintiffs have brought a California class action for violations of the California

Labor code. Even a defendant with no offices, employees, or property in a district has significant contacts for purposes of the section 1404 analysis when it targets or markets its services to residents of the district, as Defendants have done by contracting with clients in the Northern District of California and sending its drivers to pick-up and drop of freight to those locations. *See, e.g., Meyer Mfg. Co. v. Telebrands Corp.*, No. CIV. S-11-3153 LKK, 2012 WL 1189765, at \*5 (E.D. Cal. Apr. 9, 2012) (plaintiff's choice of forum was entitled to deference where the defendant targeted consumers in the district); *Morris Cerullo World Evangelism, Inc. v. World Religious Relief, Inc*., No. 13-CV-2780-BTM-BLM, 2014 WL 4352090, at \*3-4 (S.D. Cal. Sept. 2, 2014) (similar).  It is clear that, given the extent of Defendants' business activities in California, Defendants purposefully availed themselves of the benefits of doing business in California. *See, e.g.*, *Vuori v. Grasshopper Capital LLC*, No. 17-CV-06362-JCS, 2018 WL 1014633, at \*21 (N.D. Cal. Feb. 22, 2018) ("Defendants have contacts with the forum in that they purposefully availed themselves of the benefits of conducting business in California. ... Accordingly, this factor on balance weighs against transfer.").

### B.     The Convenience of the Witnesses does Not Warrant Transfer to Ohio.

#### 1.     Defendants Have Not Demonstrated Ohio Would be More Convenient

"To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Williams*, 157 F. Supp. 2d at 1108; *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002*)* (finding that the moving party failed to establish that this factor favors transfer because it did not identify key witnesses to be called or present a statement as to the importance of their testimony); *General Ret. Sys. of the City of Detroit v. The Wells Fargo Mortg. Backed Secs*. 2006-AR18 Trust, 2009 U.S. Dist. LEXIS 130360, at \*24-25, (N.D. Cal. 2009) (citing *Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993)); see also *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (The court must not only consider "the number of witnesses in each location," but also "examine[ ] the materiality and importance of the anticipated witnesses' testimony and then determine[ ] their accessibility and convenience to the forum."). "The party moving for transfer

must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'"

Yet the only convenience Defendants can identify is some of their Ohio-based employees that are potential witnesses. Merely shifting the inconvenience of litigating to the opposing party is not grounds for transfer. *See Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *5 (N.D. Cal. Apr. 7, 2014) ("It is not enough for defendant to merely show that he prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another."). Nor does the location of the moving parties' employee witnesses support transfer. *See Herman*, 2017 WL 8292463, at *2 (denying the defendant's motion to transfer even though the defendants "corporate headquarters, key witnesses, and relevant documents are located exclusively in Utah" while noting the "irony in a transportation company objecting to the burden of *transportation*.") (emphasis in original). As the courts have recognized, the convenience to party witnesses is accorded little weight because "they can be compelled to testify regardless of the forum in which the lawsuit is litigated." *Stribling v. Picazo*, No. 15-CV-03337-YGR, 2018 WL 620146, at *3 (N.D. Cal. Jan. 30, 2018); *SkyRiver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc*., 2010 WL 4366127, at *3 (N.D. Cal. 2010) (finding the convenience of a litigant-employer's witnesses are "entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum."); *STX, Inc. v. Trik Stik, Inc*., 708 F.Supp. 1551, 1556 (N.D. Cal. 1998).  For this reason, "'[t]he convenience of non-party witnesses is the more important factor.'" *Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-01701-JSW, 2015 WL 5728415, at *7-8 (N.D. Cal. Sep. 30, 2015)  (quoting *Saleh v. Titan Corp*., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005))

Defendants do not specifically identify any of the non-party witnesses located in Ohio that will be testifying on its behalf nor the specific nature of their testimony.  Instead, Defendants rely on identifying only litigant-employer's witnesses, which are given little weight. Moreover, Defendants recognize that at least 69 of the class members are residents of California. *See* (36-3, ¶ 7). Testimony of class members who worked and reside in California will be of be paramount as will the testimony of the Plaintiffs, who chose the venue of California, as they each would be

testifying regarding every facet of the case. Furthermore, Plaintiffs have identified several specific potential non-party witnesses in California which are identified in their Bills of Lading, documents that identify not only the location of Plaintiffs' work, but also a contact person by name and contact number at that location so that that witness may be called. *See* Walters Declarations, ¶¶ 8-9 Exhs A-B.  Additional Bills of Lading are records that would be in the possession of the Defendants and would identify further non-party witnesses in the same manner.   Therefore, the convenience of the forum for the witnesses does not weigh in favor of transferring venue.

### 2.     Defendants' Alleged Contrary Authority is Distinguishable

Defendants' alleged contrary authority that other non-California resident drivers that sued out-of-state transportation companies have been transferred are distinguishable. First, as previously mentioned in both *Martinez v. Knight Transp.* and *Herman v. Andrus Transp. Servs.* the Eastern and Central Districts found the direct opposite result, showing how an "individualized, case-by-case consideration of convenience and fairness," is required. *Jones*, 211 F.3d at p. 498.  In this regard Defendants' cursory articulation of the facts in their allegedly comparable cases shows how they are actually distinguishable. For instance, Defendants cite to *Luna v. Wal-Mart Transportation, LLC*, No. EDCV18331PSGKKX, 2018 WL 3569357, at *3 (C.D. Cal. July 11, 2018) and while that case did involve a California truck driver, the claims brought in that matter were for nationwide class action for violation of the Fair Credit Reporting Act ("FCRA"), making the Court agreed with the defendant that "none of [Plaintiff's] California connections go to the central issue(s) in this case[.]"  Similarly, in F*oster v. Nationwide Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 95240, *2, 2007 WL 4410408 (N.D.Cal. Dec. 14, 2007) the plaintiff's alleged "a nationwide Fair Labor Standards Act (FLSA) class bringing a claim for failure to pay overtime compensation[.]" Defendants' lack of comparable facts continues in *Smith v. Oakley Transp., Inc.*, No. 19-CV-05854-EMC, 2020 WL 563076, at *2 (N.D. Cal. Jan. 30, 2020) where the Court did give some weight to the fact that only "2.34% (*i.e.*, 16 out of 683)" of the putative class resided in California, but transferred the action to Florida where it was "undisputed that 42% of the putative class members live[d.]"  Likewise, in *Parr v. Stevens Transp., Inc.*, No. C 19-02610-WHA, 2019 WL 4933583, at *2 (N.D. Cal. Oct. 7, 2019) the court found Texas the more convenient forum for

the plaintiffs themselves given "[o]ne of the three named plaintiffs lives in Texas and… Texas is also home to approximately one-third of the putative class, while California is home to less than one percent."

Here, Defendants seek to transfer this matter to a forum state where they admit neither Plaintiff resides and only about 7% (180 of 2,489) of the putative class members reside. See ECF 36-3 ("Declaration of Edward R. Wadel"), ¶ 7.  Similarly, Defendants ignore that in *Russell v. Werner Enterprises, Inc.*, No. C 14-3839 PJH, 2014 WL 4983747, at *2 (N.D. Cal. Oct. 6, 2014)  the defendant was "already defending against two other [wage-and-hour] class actions" in the transferee forum, a fact that other courts have already found to make that case distinguishable. *See Herman*, 2017 U.S. Dist. LEXIS 222136, *6 (finding *Russell* distinct for this very fact).

Finally, while Defendants stress that  "nearly 75% [of the putative class] reside east of the Mississippi River" Defendants have presented no evidence or real argument other than citation to District Court holdings that that alleged fact actually makes Ohio a more convenient forum that California.  In fact, Plaintiffs themselves geographically live closer to Ohio than to California, but recognize it is more convenient and more cost effective for them to traveler slightly farther to the Northern District of California. *See* Walters Declarations, ¶ 11.  Given the convenient placement of two major airports in the Northern District, in both San Francisco and Oakland, (*id*.) and the lack of any forum state holding more that about 12-13% of the class members (See ECF. 36-3, ¶ 7), Defendants cannot meet their burden to show convenience through use of putative class members who would still be travelling to Defendants' chosen forum. Moreover, in evaluating these factors, the Court should be mindful that counsel can agree to hold all party and non-party depositions in the location most convenient to the witnesses (including Ohio) and can advance hotel costs for any class member who wishes to attend hearings in California. *See Swamy v. Title Source, Inc*., 2017 WL 2533252, at *3 (N.D. Cal. June 12, 2017) (ordering class counsel to advance hotel costs for class members to attend hearings and finding that this addressed concerns raised by defendant's motion to transfer).  As such, this factor weighs in favor of jurisdiction remaining in the Northern District of California.

**C.**    **Familiarity with Governing State Law Strongly Favors Venue in California.**

"There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964). Accordingly, California district courts typically find that this factor weighs against transfer of cases which, like this one, are brought exclusively under California law. *See e.g. Jimenez v. Haxton Masonry, Inc.*, 2019 U.S. Dist. LEXIS 79639, at *5-9 (N.D. Cal. May 10, 2019) (finding that this District's familiarity with California law "weigh[ed] significantly in favor of the action remaining in this District"); *Martinez*, 2017 WL 2722015, at *7 ("Without reaching the substantive question of whether California law would apply to putative class members who are not residents of California, the court finds persuasive the argument that California district courts are more familiar with the state law governing plaintiff's claims.").

Here, this factor militates strongly against transfer because Plaintiffs' claims for wages include protections that are unique to California law that do not have direct analogues under the laws of Ohio. Further, Plaintiffs' claims implicate the issue of whether California's wage-and-hour statutes apply to workers engaged in interstate transportation, an issue which has been certified to the California Supreme Court multiple cases. *See Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018); *Oman v. Delta Air Lines, Inc*., 889 F.3d 1075 (9th Cir. 2018); *see also Booher v. JetBlue Airways Corp.*, 2016 WL 1642929, at *3 (N.D. Cal. Apr. 26, 2016). Simply put, judges within the District Courts of Ohio lack the same degree of familiarity as this Court with respect to the issues presented by this action.

### D.   Judicial Economy Does Not Favor Transfer to Ohio.

A court is to weigh whether the transfer will avoid duplicative litigation, effect judicial economy, and prevent time and money from being wasted. *Van Dusen*, 376 U.S. at 616. Even then the "judicial economy of having the same judge handle multiple suits should no 'dominate the transfer inquiry.'" *Cascades Projection LLC. v. NEC Display Solutions of America, Inc*., 2015 WL 12698454 (C.D. Cal. June 5, 2015) (*quoting In re EMC Corp*., 501 Fed. Appx. 973, 976 (Fed. Cir. 2013)). Moreover, retaining this case will enhance judicial economy. This Court will have made several rulings by the conclusion of this motion and is familiar with underlying facts of this matter.

Transferring the case at this stage would negate these efficiencies as the transferee court would have to get up to speed on the same facts and issues. *See Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1039 (D. Or. 2015) (noting that the court had "already familiarized itself with the issues of the case" which weighed against transfer). Defendants' statistical analysis of the case loads of judges in this district and to the proposed transferee district may slightly favor transfer based on basic math, but does not account, again for the fact that the judges in the Northern District of Ohio would be taking on a matter brought under the laws of a foreign jurisdiction, no doubt slowing the time take this matter to trial and compounded by the delays caused by the transfer itself. Thus, judicial economy is not determinative of this inquiry particularly where, as here, all other factors militate against transfer to Ohio.

**E.      Injunctive Relief Substantially Favors Maintenance of Venue in California.**

Where injunctive relief is sought, it is important to consider which court will be "closer to the action" and thus "better [able] to enforce and monitor any injunctive relief awarded" in the state where it is to be enforced. *Kia Motors Am., Inc. v. MPA Autoworks*, 2005 U.S. Dist. LEXIS 49299, *14 (C.D. Cal. 2005) (quoting Law Bulletin Pub. Co. v. LRP Publications, Inc., 992 F. Supp. 1014, 1020-1021 (N.D. Ill. 1998)). Here, Plaintiffs are seeking injunctive relief to stop Defendants' unfair business practices in California under California Business and Professions Code section 17200 et seq. The Northern District of California is far better suited to monitor Defendants' compliance with an order granting injunctive relief for the work being done by Defendants' employees in California than the Northern District of Ohio. Thus, it is more convenient to have the matter heard in the current forum than Defendants' proposed forum.

**F.      The Location of Evidence does Not Support Transfer to Ohio.**

Given that electronic discovery is the norm, ease of access to evidence is at best a neutral factor given the portability of the information. *See, e.g., Martinez*, 2017 WL 2722015, at *18-19 (finding "access to evidence" factor neutral where "neither party specifically identifie[d] any documentary evidence that [wa]s only available in hard copy, or explain[ed] what hardship they would suffer by transporting or producing these documents to a different district than where they [we]re stored"); *Finjan, Inc. v. Sophos Inc*., 2014 WL 2854490, *5–6 (N.D. Cal. June 20, 2014);

OPPOSITION TO MOTION TO TRANSFER
VENUE

*Sarinara v. DS Waters of Am. Inc*., 2013 WL 3456687, at *2 (N.D. Cal. July 9, 2013) (finding ease of access to evidence to be a neutral factor "given the availability of digital records"). The location of the documentary evidence does not substantially weigh in favor of transferring the case. Defendants indicate that their records are kept in Ohio and Michigan. However, Defendants gives no indication that the documents cannot easily be reproduced in the Northern District of California. Indeed, the existence of evidence in the form of paper documents, which are light, compact, and portable, does not support transferring this matter like other physical evidence, given these documents likely exist in electronic form, or can easily be converted into electronic form, and can be transferred via the internet or portable storage device. Moreover, Defendants were required to maintain records in the State of California pursuant to California Labor Code § 226(a). If Defendants have not done so as required, then they should not reap benefits from their violation of California Labor Code § 226(a) (requiring "the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."). Therefore, given that documentary evidence can easily be reproduced in California, if it does not already exist here, this factor does not weigh in favor of a transfer.

### G.    Local Interests Strongly Weigh Against Transfer to Ohio.

California has a strong interest in this controversy that weigh significantly against transfer because the alleged harm occurred within the State of California and California's expressed public policy favors resolving California employment claims within California.  In general, "California has an interest in resolving controversies pertaining to its state employment law, and in protecting the rights of any putative California class members." *Martinez*, 2017 WL 2722015, at *21. This interest is especially strong as to any putative class members who are California residents who may fall within the scope of Cal. Lab. Code § 925. *See Karl v. Zimmer Biomet Holdings, Inc.*, 2018 WL 5809428, at *7 (N.D. Cal. Nov. 6, 2018) (finding that this factor "tipp[ed] the scales against transfer" because "[s]ection 925 expresses California's interest in preventing contractual circumvention of its labor law."). As previously noted by Judge Alsup, "[t]here is no doubt Section 925 expresses California's strong public policy against enforcing forum-selection clauses in employment agreements." *Karl*, 2018 WL 5809428, at *3; *see also Alabsi v. Savoya,* 2019 WL 1332191, at *8 (N.D. Cal. 2019); *Depuy Synthes Sales, Inc.*

*v. Stryker Corp.*, 2019 WL 1601384, at *3- 4 (C.D. Cal. June 7, 2019); *Friedman v. Global Payments, Inc.*, 2019 WL 1718690, at *2-3 (C.D. Cal. 2019).

Although Plaintiffs drove in many states, all of the claims they assert in this action arise under California law, and are predicated exclusively on Plaintiffs' time spent driving in California. While Defendants argue that Plaintiffs' claims arose in Ohio because that is where the policies at issue were promulgated, the California Supreme Court has made clear that application of the California Labor Code depends on the state in which the work is performed, not on the state in which the employer's wage policies are promulgated. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) (holding that California's overtime laws applied to non-resident employees who worked primarily in their home states of Colorado and Arizona, but also worked in California (and several other states) for "entire days or weeks" at a time); *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019); (relying on *Sullivan* in concluding that California minimum-wage laws applied where neither the employees nor the employers resided in California). Accordingly, numerous courts have found that the work at issue having been performed in California weighs against transfer. *See Herman*, 2017 WL 8292463, at *3 (citing the fact that "the claims [we]re related to transportation services performed by Andrus employees driving in California" as a factor that weighed against transfer, even though the employer had promulgated its mileage-based pay system from its headquarters in Utah); *Karl v. Zimmer Biomet Holdings, Inc.*, 2018 WL 5809428, at *14-15 (N.D. Cal. Nov. 6, 2018) ("That defendants are headquartered in Indiana 'does not negate the local impact of [their] decisions when they are implemented elsewhere.'") (quoting *Shultz v. Hyatt Vacation Marketing Corp.*, 2011 WL 768735, at *5 (N.D. Cal. 2011))

**H.     The Unfairness of Imposing Jury Duty on Citizens in an Unrelated Forum Weighs Against Transfer to the Northern District of Ohio.**

The imposition of jury duty on citizens of the Northern District of Ohio also weighs against transfer. Ohio and its citizens have little to no interest in this class action, which consists of drivers performing work in the California and seeking relief under the California Labor Code. Hence, Ohio as a forum is completely unrelated to this action save for it being the location of some of the

Defendants' offices. Thus, the unfairness of burdening its citizens with jury duty in this action weighs against transfer.

## V.      CONCLUSION

Based on the foregoing argument and authority, Plaintiffs respectfully requests that the Court deny Defendants' Motion to Transfer.

Dated:  April 3, 2020                          Respectfully Submitted,

**THE KICK LAW FIRM, APC**

By:      /s/ Daniel J. Bass
Taras Kick
Daniel J. Bass
Roy K. Suh
Attorneys for Plaintiffs GREGORY
WALTERS and CHRISTI WALTERS,
individually, and on behalf of all others
similarly situated